UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

Motion Control Corporation,
a Michigan corporation,

Plaintiff,

v.

SICK, Inc.,
a Minnesota corporation,

Defendant.

Court File No.: 03-CV-5192 JRT/FLN

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT'S MEMORANDUM**

**OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

---

EXHIBIT

tabbles

A

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

A. APPLICABLE SECTIONS OF THE AGREEMENT ..... 1

B. MCC'S NON-PERFORMANCE UNDER THE AGREEMENT AND FIRST ARBITRATION ..... 2

C. THIS COURT'S ORDERS OF MARCH 31, 2003 AND JUNE 19, 2003 ..... 4

D. MCC'S SEPTEMBER 9, 2003 COMPLAINT (THE "INSTANT ACTION") ..... 5

LEGAL STANDARD ..... 9

ARGUMENT ..... 10

I. THIS COURT'S ORDER OF MARCH 31, 2003 DISMISSING MCC'S PRIOR CLAIM FOR BREACH OF THE DISTRIBUTION AGREEMENT, AND ORDER OF JUNE 19, 2003 ARE RES JUDICATA AS TO MCC'S CLAIMS AGAINST SICK ..... 10

II. THIS COURT'S ORDERS OF MARCH 31, 2003 AND JUNE 19, 2003 AFFIRMING ARBITRATOR SOLUM'S APRIL 1, 2002 ARBITRATION AWARD ARE RES JUDICATA AS TO MCC'S CLAIMS AGAINST SICK ..... 14

III. MCC'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL ..... 16

IV. MCC'S CLAIMS ARE FURTHER BARRED FOR THE SAME REASON THAT THIS COURT DISMISSED ITS CLAIMS IN THE PRIOR ACTION ..... 17

A. MCC'S CLAIMS ARE BARRED BY THE ELECTION OF REMEDIES DOCTRINE ..... 18

B. THE PLAIN LANGUAGE OF THE AGREEMENT BARS MCC'S CLAIM FOR LOST PROFITS, AS STATED BY THIS COURT'S ORDER OF JUNE 19, 2003 ..... 19

V. SANCTIONS ARE APPROPRIATE AGAINST MCC FOR SPIPIOUS LITIGATION ........21

CONCLUSION ........22

## INTRODUCTION

Defendant SICK, Inc. ("SICK") submits this Memorandum in Support of its Motion to Dismiss the claim asserted by Motion Control Corporation ("MCC") in the Instant Action. MCC's claim has been disposed of on the merits in two Federal Court actions; SICK, Inc. v. Motion Control Corporation, 2003 U.S. Dist. LEXIS 10612 (D. Minn., June 19, 2003) 01-1496 (JRT/FLN) ("Original Action") which is still ongoing, and in Motion Control Corporation v. SICK, Inc., 2003 U.S. Dist. LEXIS 11444 (D. Minn., March 31, 2003) 02-1661 (JRT/FLN) ("Vacation Action") which is currently on appeal before the Eighth Circuit. The Instant Action is therefore barred by the doctrines of res judicata and collateral estoppel. MCC's spurious action in the Instant Action is appropriate for Rule 11 sanctions.

## STATEMENT OF FACTS

SICK will not attempt to repeat the facts which have been already presented to this Court in the Original Action and Vacation Action. However, the following facts are provided for context. As this Court is aware, SICK and MCC entered into a Distributor Agreement on October 5, 1998 ("Agreement"), which provided that MCC would act as the exclusive distributor of SICK products, including safety light curtains and other safety and sensor devices, in SICK's Michigan Territory.

### A. APPLICABLE SECTIONS OF THE AGREEMENT.

The Agreement includes the following two provisions relating to remedies in the event of a breach of the Agreement.

> In the event SICK intends to terminate the Agreement based on the allegation of inadequate performance by Distributor, **Distributor may, as its *sole and exclusive remedy* and if acting in good faith, it shall immediately submit the issue in question to informal binding arbitration** at Minneapolis, Minnesota.

Agreement, § 13, p. 5, Affidavit of Steven H. Silton dated June 27, 2002 ("Silton Affidavit dated June 27, 2002"), Exhibit 1 (emphasis added).[1]

> **IN NO EVENT SHALL SICK OR DISTRIBUTOR BE LIABLE TO EACH OTHER FOR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, OR SEEK EXEMPLARY OR PUNITIVE DAMAGES.**

Exhibit 1 at § 15, p. 7 (emphasis in original).

The Agreement also has an integration clause which provides that:

> **This Agreement contains the entire agreement between the parties relative to the subject matter hereof and supersedes all previous agreements and understanding between the parties. There are no oral representations or other agreements between the parties affecting this Agreement.**

Exhibit 1 at § 19, p. 8 (emphasis in original). Finally, the Agreement provides that: "This Agreement may not be modified in any way without the written consent by all parties hereto." Exhibit 1 at § 19, p. 8.

**B.** MCC'S NON-PERFORMANCE UNDER THE AGREEMENT AND FIRST ARBITRATION.

On September 28, 2000, SICK gave MCC notice of its intent to terminate the Agreement. MCC demanded arbitration of SICK's notice of termination. The first arbitration panel held that the September 28, 2000 correspondence was untimely as a notice of non-renewal, and treated the correspondence as a notice of termination under paragraph 3 of Section 13 of the Agreement. See Silton Affidavit dated June 27, 2002, Exhibit 2; Arbitration Award dated August 2, 2001. By an

---

[1]All references to numbered exhibits herein are exhibits to the Silton Affidavit dated June 27, 2002 originally filed in the Original Action.

award dated August 2, 2001, the arbitration panel, relying solely on issues of "for cause" termination, noted numerous breaches on behalf of MCC. Exhibit 2. The panel ruled that SICK had adequately supported its entitlement to terminate the Agreement under Paragraph 3 of Section 13 thereof on the ground "that Motion Control has failed to employ at least 15 people trained in the sale of SICK Products who will devote their time to marketing and sales of SICK Products in the Territory" and "that Motion Control has failed to provide point-of-sales reports that comply with the requirements of Section 7 of the Agreement." Id However, the panel ruled that SICK, while it had the right to terminate the Agreement due to MCC's inadequate performance, did not give the proper notice to MCC as required under the Agreement and, therefore, any termination on SICK's part was invalid.

Prior to the first arbitration ruling, on July 2, 2001, SICK notified MCC of current defaults *and* SICK's intention to not renew the Agreement for the following year, Affidavit of Alberto Bertomeu ("Bertomeu Affidavit"), Exhibit A, Correspondence dated July 2, 2001 from Alberto Bertomeu to Russell Quaine.[2] The July 2, 2001 letter put MCC on notice that SICK would not renew the Agreement upon its annual expiration date of October 5, 2001. In addition, SICK specifically notified MCC of its inadequate performance.

MCC responded with a letter from its President, Russell Quaine, dated July 20, 2001, and followed up with a similar letter on August 20, 2001 indicating that ***MCC would not cure*** the adjudicated and noticed defaults until and unless, *inter alia*, SICK dismissed the Original Action. See Correspondence dated August 20, 2001 from Russell Quaine to Alberto Bertomeum, Exhibit B. Despite adjudicated and acknowledged breaches of the Agreement, MCC demanded a second

[2]All references to lettered exhibits herein are exhibits to the Bertomeu Affidavit originally filed in the Original Action.

arbitration pursuant to the Agreement.

The parties consented to having the second arbitration hearing before retired judge and Arbitrator Richard B. Solum.

In an Arbitration Award dated April 1, 2002 ("Arbitration Award"), Arbitrator Solum held that MCC had "inadequately performed under the Agreement." Arbitrator Solum further held that SICK had arguably violated the Agreement by making direct sales. To allow MCC time to recoup its investment, Arbitrator Solum awarded MCC two additional years under the Agreement. MCC requested that Arbitrator Solum reconsider his April 1, 2002 ruling. Arbitrator Solum issued his Arbitrator's Ruling on MCC's Application for Modification on May 6, 2002, denying MCC's Application for Modification and clarifying his Arbitration Award. See Silton Affidavit dated June 27, 2002, Exhibit 7. Arbitrator Solum noted that: "the parties agreed that the arbitrator was to 'grant any remedy or relief that the arbitrator deems just and equitable.' For reasons set out in the Decision and Award, the undersigned did so here, while being guided by legal principles as well." Exhibit 7, p. 2. "MCC argues that the Decision and Award reforms the Agreement to insert a termination date. But given the undersigned's finding that *MCC was in breach* of the Agreement, **it can just as easily be said that the Decision and Award simply defers for MCC's benefit what otherwise would have been a termination as of year-end 2001**." Exhibit 7, p. 2 (emphasis added).

C. THIS COURT'S ORDERS OF MARCH 31, 2003 AND JUNE 19, 2003.

On August 16, 2001 SICK commenced the Original Action for, among other things, MCC's breach of the Agreement. MCC counterclaimed based on the same legal theories and same facts that were the subject of the prior arbitrations. Specifically, MCC once again asserted that, *inter alia*, that SICK had breached the Agreement by making direct sales to its customers.

All parties brought cross motions for Summary Judgment, which were heard on November 26, 2002. By Order and Memorandum Opinion and Order, both dated March 31, 2003, Affidavit of Steven H. Silton ("Silton Affidavit dated September 30, 2003"), Exhibit II and IV[3], this Court refused to remand the Vacation Action, affirmed the Arbitration Award and dismissed, in their entirety, MCC's claims against SICK. By Order dated June 19, 2003, Exhibit III, this Court reconsidered an unrelated portion of its March 31, 2003, Order, Exhibit IV, and expanded on its dismissal of MCC's claims.

With regard to MCC's Counterclaims for breach of the Agreement, this Court applied the doctrine of res judicata in dismissing such claims, and noted that:

> Thus, the Court has already found that Arbitrator Solum considered all the outstanding issues in MCC's counterclaims, and crafted a remedy designed to provide some relief to both parties while concluding the matter "without further litigation Arbitrator Solum granted MCC its full measure of relief in this case and, as the Court has already determined, that decision is final. Accordingly, the Court agrees with SICK that MCC's counterclaims in this case are barred as res judicata.

See Sick, Inc. v. Motion Control Corporation, 2003 U.S. Dist. LEXIS 10612 at *12. This Court also held that MCC's claims were barred by the Doctrine of Election of Remedies, and by the Agreement's express prohibition of damages for loss profits.

Id. at 14-15, 16.

**D.** MCC'S SEPTEMBER 9, 2003 COMPLAINT (THE "INSTANT ACTION")

By a Complaint dated September 9, 2003, with apparent contempt for the ongoing actions in this Court MCC has now commenced another action for damages under the Agreement.[4] The

[3] All references to roman numeral exhibits herein are exhibits to Silton Affidavit dated September 30, 2003.

[4] MCC did not indicate that any related cases existed. By letter dated September 19, 2003, SICK informed the Court of existence of both the Original Action and Vacation Action.

claim contained therein is identical to claims adjudicated in two prior final judgments of this Court.

It is unclear whether the Complaint in the Instant Action seeks damages based on a violation of the Arbitration Award, or based on the Agreement.[5] MCC asserts a "breach of contract" claim against SICK for alleging "continuing violation of the Agreement and the terms and conditions of the decision and award by Arbitrator Solum," and alleges that SICK "breached the terms of the Agreement and as interpreted in the decision and award by Arbitrator Solum." Complaint at 5, 6.

A review of the claims interposed in the Original Action is illustrative at MCC's recycling of identical claims in the Instant Action. In its Counterclaim, in the Instant Action, MCC alleged the following:

**COUNT I: BREACH OF CONTRACT**

> 16. Defendant Counterclaimant MCC realleges and incorporates the allegations set forth in paragraphs 1 through 15 of its Counterclaim above as though fully stated herein.
>
> 17. The Agreement provides that MCC shall be the exclusive distributor of SICK products in Michigan, that Plaintiff would assist MCC in sales of product and that Plaintiff would provide MCC with customer demand and sales leads.
>
> 18. Plaintiff breached the Agreement by, among other things, making direct sales to customers in Michigan, by failing and refusing to assist MCC in the sale of SICK products, by allowing other distributors to make sales in Michigan and by undermining MCC's customer relationships and goodwill.
>
> 19. Plaintiff's actions in breach of the Agreement are effectively a *de facto* termination of the Agreement without cause.
>
> 20. Plaintiff's actions in violation of the Agreement additionally violated the covenant of good faith and fair dealing, which is implied in the Agreement under Minnesota law.

---

5 Any argument by MCC that it has a claim under the Agreement for reformation or modification has been rejected uniformly by Arbitrator Solum and this Court. MCC v. SICK at 17-18, 23-24.

21. Plaintiff's conduct in breach of the Agreement caused MCC to sustain irreparable harm and damages in excess of $75,000.

See Answer and Counterclaim of Motion Control Corporation at 8-9, attached to Silton Affidavit dated June 27, 2002, Exhibit 8, and hereinafter referred to as "Counterclaim."

MCC in the Instant Action, asserts as follows:

**COUNT I: BREACH OF CONTRACT**

16. MCC realleges and incorporates the allegations set forth in paragraphs I through 15 though fully stated herein.

17. The Agreement provides that MCC shall be the exclusive distributor of SICK products in Michigan, that SICK would assist MCC in sales of product and that SICK would provide MCC with customer demand and sales leads. The Agreement as interpreted in the decision and award of Arbitrator Solum required SICK to uphold its obligations to MCC including, but not limited to, supporting and assisting MCC in the territory and honoring MCC's rights of exclusivity as provided in the Agreement and as interpreted in the decision and, award,

18. After October 5, 2001 and including to date, SICK breached the terms of the Agreement and as interpreted in the decision and award of Arbitrator Solum, by, among other things, making direct sales to customers in Michigan that materially hindered MCC's ability to realize its intended expectations relative to its exclusive distributorship in Michigan, by failing and refusing to assist MCC in the sale of SICK products, by allowing other distributors and companies to make sales in Michigan and by undermining MCC's customer relationships and goodwill.

19. SICK's actions in breach of the terms of the Agreement and as interpreted in the decision and award of Arbitrator Solum are effectively a *de facto* termination of the Agreement without cause.

20. SICK's actions in violation of the terms of the Agreement and as interpreted in the decision and award of Arbitrator Solum since October 5, 2001 additionally violated the covenant of good faith and fair dealing, which is implied in the Agreement under Minnesota law. SICK unjustifiably hindered and frustrated MCC's ability to perform its obligations under the terms of the Agreement and as interpreted by the decision and award of Arbitrator Solum by, among other things, making direct sales to customers in the territory in violation of the Agreement, by selling products to other companies and entities to distribute in the territory, by undercutting MCC's pricing efforts with customers in the territory and by failing to support MCC's efforts to market and distribute SICK

> products in the territory.
>
> 21. SICK conduct from October 5, 2001 to the present in breach of the terms of the Agreement and as interpreted by the decision and award of Arbitrator Solum has caused MCC to suffer damages due to its significant investment of money, time and resources in training and compensating its personnel and in promoting SICK's product lines and business in Michigan in excess of $75,000. Alternatively, MCC has suffered damages in the form of lost profits on sales that were wrongfully made by SICK in breach of the terms of the Agreement and as interpreted by the decision and award of Arbitrator Solum.

See Complaint of Motion Control Corporation at 5-7, attached to Silton Affidavit dated September 30, 2003, as Exhibit I.

A significant number of allegations asserted by MCC in the Instant Action are identical to its prior adjudicated Counterclaim. MCC utilizes the Counterclaim as a template for the Complaint, merely adding referral to the Arbitration Award most notably the allegations relating to SICK's alleged improper conduct, Paragraphs 18 and 19 of both the Complaint and Counterclaim each assert claims based on "direct sales," failing and refusing to assist MCC in the sale of SICK products," "allowing other distributors and companies to make sales in Michigan," "undermining MCC's customer relationships and goodwill," and "*de facto* termination of the Agreement without cause." See MCC's Counterclaim, Exhibit 8 at 8-9; Complaint, Exhibit I at 5-7. See id.

In the Instant Action, MCC claims damages as a result of, *inter alia*, "lost profits." See Complaint, Exhibit I at 7. In the analysis of Phillip S. Williams' Expert Report compiled at the behest of MCC in the Original Action, Williams summarized MCC's alleged damages "beyond the date of trial." See Expert Report of Phillip S. Williams at 8, attached to Silton Affidavit dated June 27, 2002 as Exhibit 9, and hereinafter referred to as (the "Expert Report").

In dismissing MCC's Counterclaim of breach of contract, this Court considered the terms

of the Agreement which prohibit damages for lost profits and rejected MCC's claim for such damages. In doing so, this Court opined that MCC's argument for lost profits was "founded solely on conjecture" and that "[i]t not only ignores the plain text of the Agreement, but also makes unsupported assumptions about the parties' intentions. The Court therefore finds this argument without merit." SICK, Inc. v. Motion Control Corp., 2003 U.S. Dist. LEXIS 10612 at *15.

Regardless of whether MCC is trying to relitigate the Counterclaim, or attempting to enforce the Arbitration Award, MCC's conduct is barred by the doctrines of res judicata and collateral estoppel. For the reasons set forth above, and argued below, this Court should dismiss MCC's Complaint, and award sanctions to SICK.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Schaller Telephone Co. v. Golden Sky Sys., Inc. 298 F.3d 736 (8th Cir. 2002). A trial court, in ruling on a motion to dismiss, takes all well-pled facts as true, Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990), and is required to review the complaint in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 122 S.Ct. 2179, 2181 (2002); Group Health Plan, Inc. v. Philip Morris, Inc., 86 F. Supp. 2d 912, 915-916 (D.Minn. 2000) (citing Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986)). However, "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F. 3d 402, 408 n.10 (11th Cir. 1996). A motion to dismiss

tests the legal sufficiency of Plaintiff's Complaint. See Wright & Miller, Federal Practice & Procedure: Civil 2d §1356.

## ARGUMENT

### I. THIS COURT'S ORDER OF MARCH 31, 2003 DISMISSING MCC'S PRIOR CLAIM FOR BREACH OF THE DISTRIBUTION AGREEMENT, AND ORDER OF JUNE 19, 2003 ARE RES JUDICATA AS TO MCC'S CLAIMS AGAINST SICK.

This Court's March 31, 2003 Order, as further explained by this Court June 19, 2003 Order, is res judicata as to MCC's breach of contract claim in the Instant Action. The Counterclaim in the Original Action included the claims for breaches of the Agreement, said claim being dismissed by this Court. As such, MCC's claim in the Instant Action must be dismissed.

This Court set forth the proper standard for applying res judicata in its June 19, 2003 Order:

> "This doctrine bars a party from asserting a claim if three requirements are met: (1) the prior judgment was entered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties were involved in both cases. Val-U Construction Co. of So. Dakota v. Rosebud Sioux Tribe, 146 F.3d 573, 581 (8th Cir. 1998)."

See SICK, Inc. v. Motion Control Corp., 2003 U.S. Dist. LEXIS 10612, *9 (D. Minn. 2003); see also Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1989) (reciting the identical three elements for application of res judicata).

In the Instant Action, Plaintiff asserts a claim for breach of contract based upon the Agreement, despite having raised this claim in prior litigation that resulted in a final judgment in SICK's favor. The doctrine of res judicata applies to repetitive suits involving the same cause of action. See C.I.R. v. Sunnen, 333 U.S. 591 (1948). A final judgment on the merits of an action

precludes the same parties from relitigating issues that were or could have been raised in that action. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394 (1981).

It is well-settled that arbitration awards reviewed by a court have res judicata effect. Val-U Constr. Co. v. Rosebud Sioux Tribe, 146 F.3d 573, 577 (8th Cir. 1998); Albin Stevedore Co. v. Central Rigging & Contracting Corp., 1962 U.S. App. LEXIS 4284 (9th Cir. 1962); Maidman v. O'Brien, 473 F. Supp. 25 (S.D. N.Y. 1979); Marshall v. Couch House Restaurant, Inc. 457 F. Supp. 946 (S.D. N.Y. 1978). The Instant Action arises under the same Agreement that was the subject of two prior lawsuits and two binding arbitrations, and the same "nucleus of operative facts" is involved. Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990). As a result, the recent (March 31, 2003) Order that dismissed MCC's claims for breach of the Agreement have preclusive res judicata effect.

In the Instant Action, the three elements of res judicata are met. First, this Court exercised original and ancillary jurisdiction over the prior claims of these parties in two prior suits. Second, in its Order of June 19, 2003, this Court entered judgment dismissing MCC's claims for breach of the Agreement. Third, the same parties are involved (MCC and SICK) in the Instant Action that involves the same breach of contract claim that was both resolved by arbitration and reduced to judgment. The Complaint in the Instant Action utilizes the Counterclaim as a template, not even attempting to hide the fact it is making essentially the same claim. The identical allegations – alleged breach of the 1998 Distributor Agreement by making "direct sales," "failing and refusing to assist MCC in the sale of SICK products," "allowing other distributors and companies to make sales in Michigan," "undermining MCC's customer relationships and goodwill," and a "*de facto* termination of the Agreement without cause" – are made in both Actions. MCC's Counterclaim at 8-9, Exhibit 8. (Emphasis in original).

Any argument by MCC that its present claim is somehow different or more than the claim in the Original Action is without merit. While changes on damages theory is not uncommon in the course of litigation, doing so *after* trial (and particularly, after two final judgments have been entered on the merits) is improper. See Miller Brewing Co. v. Forth Worth Dist. Co., Inc., 781 F.2d 494 (5th Cir. 1986). As this Court has held, "even when arbitration is involved, federal 'courts should not have to stand by while parties re-assert claims that have already been resolved.'" Ewart v. Y & A Group (In re Y & A Group Sec. Litig.), 38 F.3d 380, 382 (8th Cir. 1994) (citing Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067, 1069 (11th Cir.)). Courts "have the power to defend their judgments as res judicata." Ewart, 38 F.3d at 382 (citing Miller Brewing, 781 F.2d 494). The issue of lost profits and recoupment were adjudicated by this Court's Order of June 19, 2003, which order reduced to judgment Solum's equitable remedy granting MCC a two-year period in which to recoup monies.

The Fifth Circuit has ruled on this issue in a nearly identical situation. In Miller Brewing, the Fifth Circuit Court of Appeals upheld a stay on arbitration proceedings where the appellee attempted to assert new theories of damages in a new lawsuit based upon the same "operative facts" that had entitled the appellant to dismissal in a prior state court action. Miller Brewing, 781 F.2d 494, 500 (5th Cir. 1986). In Miller Brewing, the parties entered into a Distributorship Agreement, the termination of which resulted in a lawsuit in state court, a suit which was dismissed for want of prosecution.

The Fifth Circuit observed that "it appears that Plaintiff could have amended its pleadings at any point in this protracted litigation to include a claim for the damages (for wrongful breach of the Distributorship Agreement) it now seeks to arbitrate." 781 F.2d at 499. The court further held "A different cause of action is not merely a different theory of recovery, it should differ in

the theories of recovery, *the operative facts*, and the measure of recovery." Id. at 500 (emphasis in original).

In bringing the Instant Action, MCC has engaged in substantially the same behavior as proscribed in Miller Brewing. Upon the same operative facts considered in two prior arbitrations and two prior lawsuits, MCC has brought this lawsuit. In the Original Action, MCC sought *permanent* damages, not damages based on SICK's activities for a finite period ending upon filing of its arbitration. See Expert Report, Exhibit 9. While MCC's claim for damages may be narrower in the Instant Action, the damages requested in the Original Action clearly encompass the damages claimed here. Regardless of whether MCC's Instant Action seeks to recover for breach of the 1998 Distributor Agreement or whether it seeks to recoup alleged lost profits, the Instant Action is barred by the res judicata effects of two prior judgments of this Court which reduced Solum's Arbitration Award to judgment.

Finally, public policy implores this Court to deny MCC's improper attempt to moot the Arbitration Award. Plaintiff's unwarranted and ceaseless legal maneuverings openly defy and undermine one if the most fundamental objectives of the Uniform Arbitration Act (adopted by Minnesota in 1957), which is "to encourage and facilitate the settlement of disputes by providing a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions." See Eric A. Carlstrom Const. Co. v. Independent School Dist., 256 N.W.2d 479, 483 (Minn. 1977). In direct contravention to this principle, MCC is attempting to re-litigate a breach of contract claim that was considered and dismissed by this Court in the Original Action, which in turn held that Arbitrator Solum's award barred that attempt to litigate. Plaintiff's claim should thus be barred.

## II. THIS COURT'S ORDERS OF MARCH 31, 2003 AND JUNE 19, 2003 AFFIRMING ARBITRATOR SOLUM'S APRIL 1, 2002 ARBITRATION AWARD ARE RES JUDICATA AS TO MCC'S CLAIMS AGAINST SICK.

In addition to MCC's current claim being barred by this Court's March 31, 2003 Order dismissing MCC's claims in the Original Action, it is also barred by this Court's March 31, 2003 Order affirming the Arbitration Award. MCC's claim is, in effect, an attempt to enforce the Arbitration Award. Any claim MCC had to enforce the Arbitration Award should have been brought in the Vacation Action.

As stated previously, a claim is barred by res judicata if it "arises out of the same nucleus of operative facts as the prior claim." Lane, 899 F.2d at 742. If the three elements are met, the parties are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter *which might have been offered for that purpose*." Sunnen, 333 U.S. at 597 (emphasis added). MCC has had over eighteen months to move to confirm and enforce the Arbitration Award. Instead, MCC chose to move this Court to vacate the award, which motion resulted in reducing the Arbitration Award to judgment.

While it seems only logical that the enforcement of an Arbitration Award must be brought in the same action in which the Award was confirmed, an almost identical case was subject to a Minnesota Court of Appeals action. In Bilotta, the Minnesota Court of Appeals affirmed a trial court dismissal of an action to enforce an arbitration award in a separate law suit. Bilotta & Associates v. E.D.S. Construction, 1989 Minn. App. LEXIS 525 (Minn. Ct. App. 1989) (unpublished) and attached to the Silton Affidavit dated September 30, 2003 as Exhibit V. The Minnesota Court of Appeals held, that as "[w]e agree with the trial court that viewing the claim as one for enforcement of the arbitration award, summary judgment was proper." The

Minnesota Court of Appeals also noted that:

> "Additionally, we note that Bilotta could have enforced the award without recourse to this lawsuit. Bilotta reduced the arbitration award to judgment approximately five months after this suit began. A judgment confirming an arbitration award is enforceable the same as any other judgment."

Bilotta, 1989 Minn. App. LEXIS 525 at *3-4. Bilotta is on point and dispositive to the issues in the Instant Action.

Cases from other jurisdictions also reinforce the principles upon which Bilotta is based. See Decker v. Merrill Lynch, 205 F.3d 906 (6th Cir. 2000) (summary judgment granted where lawsuit that was brought to enforce arbitration award was deemed an improper collateral attack); JSC Sec. v. Gebbia, 4 F. Supp. 2d 243, 252 (S.D. N.Y. 1998) (res judicata barred claims that plaintiff failed to assert in prior arbitration proceeding); McNally Int'l Corp. v. New York Infirmary, 145 A.D.2d 417 (N.Y. 1988) (res judicata effects of arbitration award barred suit for breach of contract).

Here, formal confirmation of Solum's Arbitration Award is unnecessary because it was, in fact, reduced to judgment on March 31, 2003. MCC opted not to confirm the Award and enforce it, but rather brought the Instant Action. This Court's prior judgments necessarily have preclusive effect as to the issue of, and claim for, breach of the Agreement. As such, MCC's claims for alleged breach of the Agreement have been adjudicated, and MCC is barred from pursuing the Instant Action.

MCC could have made a motion to enforce the Arbitration Award if it believed that SICK was not in compliance with it. Instead, MCC chose to attempt to vacate and modify the Arbitration Award, even going as far as continuing to contest this Court's jurisdiction to hear the same. The issue of breach of the Agreement simply put, has been previously and with finality

determined MCC's Instant Action is in the wrong forum and must therefore be dismissed.

## III. MCC'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

Plaintiff's claims are also subject to, and barred by, the doctrine of collateral estoppel. MCC asserted the issue of SICK's alleged breach of the Agreement in its Counterclaim to the Original Action. This Court dismissed the Counterclaim in its entirety, inclusive of MCC's claim for breach of the Agreement. Collateral estoppel thus merges the issue of breach of contract into this Court's final judgment and bars plaintiff from relitigating it in a subsequent action.

Collateral estoppel "precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment." Ellis v. Minneapolis Comm'n on Civil Rights, 319 N.W.2d 702, 704 (Minn. 1982)). In the context of arbitration, the result is no different, as an arbitration award acts as a bar to issues addressed by an arbitrator. See Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648 (Minn. 1990) (plaintiff collaterally estopped from relitigating a damages claim already decided in arbitration); Norris v. Grosvenor Marketing, Ltd., 803 F.2d 1281, 1285 (2nd Cir. 1986) (collateral estoppel barred plaintiff from relitigating claims previously resolved in arbitration); but see Houlihan v. Fimon, 454 N.W.2d 633 (Minn. Ct. App. 1990) (collateral estoppel did not bar plaintiff's arbitrated claim where plaintiff did not elect arbitration or appear as a witness). A party that proceeds to arbitration without protest is estopped from raising the same issues in a subsequent litigation. Lysholm v. Liberty Mut. Ins. Co., 404 N.W.2d 19, 21 (Minn. Ct. App. 1987) (citing Twomey v. Durkee, 291 N.W.2d 696, 699 (Minn. 1980)).

MCC submitted to arbitration claims and disputes arising under the Agreement. One of

these issues included MCC's allegation that SICK was in breach of the Agreement by making direct sales. Consequently, identical issues addressed and decided by Arbitrator Solum collaterally estopped MCC from litigating such issues. Solum addressed the issue of breach of the Agreement in his April 1, 2002 decision. In fact, it was in considering this issue that Solum fashioned an equitable remedy for MCC, allowing MCC to recoup profits for the following two years.

This action is further barred because this Court, per its March 31, 2003 Order, dismissed MCC's breach of contract claim in its entirety. The issue of MCC's breach of contract was clearly "essential" to the judgment; this Court recognized that "Arbitrator Solum stated that his award was based upon the fact that both SICK and MCC breached aspects of the Agreement; any modification to the award would upset its balance, which was intended to do justice and provide equitable relief." See Motion Control v. SICK, 2003 U.S. Dist. LEXIS 11444 at *18. This Court further dismissed the claim due to MCC's election of remedies, and the Agreement's prohibition of lost profits.

MCC's attempt to again bring the issue of breach before this Court in the Instant Action contravenes established principles of the common law of this (and every other) jurisdiction, and ignores its own recovery in equity. As such, this Court should dismiss Plaintiff's sole claim fully resolving this matter.

## IV. MCC'S CLAIMS ARE FURTHER BARRED FOR THE SAME REASON THAT THIS COURT DISMISSED ITS CLAIMS IN THE PRIOR ACTION.

In addition to this Court's March 31, 2003 and June 19, 2003 Orders summarily barring MCC's claim, the underlying reasoning behind the prior dismissal is still valid. Whether by preclusive effect as discussed above, or by a reapplication of the identical legal doctrines, MCC's

Original Action is barred by the Election of Remedies Doctrine and by the Agreement's prohibition against lost profits.

### A. MCC'S CLAIMS ARE BARRED BY THE ELECTION OF REMEDIES DOCTRINE

The legal doctrine of election of remedies stands as an additional bar to the Instant Action. MCC contracted to the exclusive adjudication by arbitration regarding the termination of the Agreement, which subsequently provided its legal remedy. As a result, MCC's claims in this litigation are barred as a matter of law.

As this Court indicated in its June 19, 2003 Order; the purpose underlying the doctrine of election of remedies is to prevent double redress for a single wrong. Vesta State Bank v. Independent State Bank, 518 N.W.2d 850, 855 (Minn. 1994); Magnusson v. American Allied Ins. Co., 290 Minn. 465, 472, 189 N.W.2d 28, 33 (Minn. 1971); Original Action at *12-.

The Court further ruled that:

> Under the doctrine, a party chooses "between different remedies allowed by law on the same state of facts, where the party has but one cause of actions, one right infringed, one wrong to be redressed." Popp Telecom v. American Sharcom, Inc., 210 F.3d 928, 934 (8th Cir. 2000) (quoting Geo. A. Hormel Co. v. First Nat'l Bank, 171 Minn. 65, 212 N.W. 738, 740-41 (Minn. 1927)).

See id. As a defense to termination in both arbitrations, and in the Original Action, MCC claimed that SICK had employed a direct sales strategy. Based on this alleged misconduct, Arbitrator Solum provided relief for SICK's alleged breach of the Agreement with the remedy of recoupment for essentially two (2) additional years of the Agreement until the year 2004. See Exhibit 6. Pursuant to the affirmative relief in the Arbitration Award, MCC may recoup any costs associated with expenditures used to build business to distribute SICK products.

MCC has received affirmative relief in the context of recoupment and now seeks

additional recovery for the same alleged transgressions by SICK. In addition, it could be argued that MCC further elected its remedies by its continual attack of the Arbitration Award. MCC has gone so far as to contest this Court's jurisdiction regarding review of the Arbitration Award. With less than six months left of the equitable award of Arbitrator Solum, MCC attempts to essentially liquidate that award in the Instant Action. This is against the express language of the Arbitration Award which indicated that it intended to resolve this matter "without further litigation." Arbitration Award at 11.

**B. THE PLAIN LANGUAGE OF THE AGREEMENT BARS MCC'S CLAIM FOR LOST PROFITS, AS STATED BY THIS COURT'S ORDER OF JUNE 19, 2003.**

In addition to MCC having its legal claims barred by the doctrines of res judicata and election of remedies, the damages requested by MCC in the Instant Action are specifically prohibited by the Agreement. As a matter of contract, MCC's claimed damages are forbidden.

Courts routinely and consistently give effect to clauses limiting recovery for consequential damages to bar claims for lost profits. Stanley A. Klopp, Inc. v. John Deere Co., 510 F. Supp. 807 (E.D. Pa. 1981) aff'd., 676 F.2d 688 (3d Cir. 1982); Stan D. Bowles Distributing Co. v. Pabst Brewing Co., 69 N.C. App. 341, 317 S.E.2d 684(1984). In Stan Bowles Distributing Co., the court reversed an award of lost profits, based upon a contractual agreement limiting lost profits as damages.

Here, the limitation of damages clause in the Agreement provides:

> "IN NO EVENT SHALL SICK OR DISTRIBUTOR BE LIABLE TO EACH OTHER FOR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, OR SEEK EXEMPLARY OR PUNITIVE DAMAGES."

Exhibit 1 at § 15, p. 7. The Complaint in the Instant Action expressly requests damages for "lost profits," and MCC's alternative requests for damages are all claims are for "lost profits" in

disguise.

This proposition is further proved by MCC's expert disclosure in the Original Action, which constitutes a binding admission of MCC. MCC's Expert, Phillip S. Williams has identified the "following categories" of damages:

1) **Lost profits** from directs sales made by SICK into MCC's market.

2) **Lost profits** from bootleg sales (SICK's sales to other distributors which end up in MCC's market).

3) **Lost profits** due to price undercutting by SICK–this caused sales to be lost and gross margins lower.

4) **Lost profits** from lost sales caused by SICK withholding sales leads.

5) **Lost profits** from December 31, 2001 to date of trial.

6) Expected **lost profits beyond the date of trial** due to a loss of revenue from customers who have discontinued doing business with MCC.

Exhibit 9, pp. 2-3 (emphasis added). Six categories of lost profits are listed. No other categories are identified. The claims asserted by MCC are all for lost profits; they are all fully barred by the contractual provisions of the Agreement.

This Court specifically addressed the issue of alleged lost profits in the Original Action. MCC's argument in the Original Action asserted that the lost profits provision of the Agreement was not to be given effect because an "absurd result" would occur if the Agreements plain terms were to be enforced. SICK, Inc. v. Motion Control Corp., 2003 U.S. Dist. LEXIS 10612 at *15. In reading the Agreement's terms in conjunction with MCC's Counterclaim, this Court stated that MCC's argument for lost profits was "founded solely on conjecture" and that "[i]t not only ignores the plain text of the Agreement, but also makes unsupported assumptions about the parties' intentions. The Court therefore finds this argument without merit." See id. MCC's

attempt to resurrect its damages claims by simply ignoring this Court's prior rulings, and the express language of the Agreement, should be denied.

## V. SANCTIONS ARE APPROPRIATE AGAINST MCC FOR THIS SPIPIOUS LITIGATION.

Not only is the Instant Action not without merit, but exposes Plaintiff and its attorney to sanctions based upon Rule 11. MCC and its counsel have no reasonable basis upon which to base their present claims for breach of contract and damages for lost profits. This Court's Orders of March 31, 2003 and June 19, 2003 gave MCC and its counsel adequate and proper notice that such claims are without merit. For MCC to once again bring these matter before this Court is a waste of judicial resources, imposes financial burden on Defendant SICK to prepare this response, and is contrary to law.

On September 10, 2003, Defendant's counsel, upon receiving notice that the Instant Action had been filed, immediately notified Plaintiff via e-mail that serving this lawsuit would potentially subject Plaintiff to sanctions. See E-mail dated September 10, 2003, attached to the Silton Affidavit dated September 30, 2003 as Exhibit VI. MCC served this lawsuit upon Defendant SICK on or about September 11, 2003. On September 19, 2003, Defendant SICK served Plaintiff MCC with Notice of Motion for Sanctions.

As of the date of filing of this Motion, Plaintiff has not yet exercised its option to withdraw this suit and benefit from safe harbor. In the alternative, if Plaintiff does withdraw this suit on or before October 10, 2003 (within twenty-one [21] days of September 19, 2003, pursuant to F. Rule Civ. P. 11(c)(1)(A)), Defendant requests this Court to award sanctions and costs for expenses incurred to date as a result of Plaintiff's filing the Instant Action.

## CONCLUSION

MCC seeks to continue a quixotic battle that it has already lost, not once, but three times. For the same reasons stated by this Court in its June 19, 2003 Order, this Instant Action is barred by the doctrine of res judicata. It is likewise barred by the related doctrines of collateral estoppel and election of remedies. Accordingly, this suit must be dismissed, with appropriate sanctions and penalties imposed to deter and punish MCC for its vexatious litigation conduct.

Dated: October 1, 2003

**MANSFIELD, TANICK & COHEN, P.A.**

By: ______________________________

Steven H. Silton (260769)
Charles A. Horowitz (294767)
Shawn L. Pearson (326069)
1700 Pillsbury Center South
220 South Sixth Street
Minneapolis, MN 55402-1409
(612) 339-4295

**ATTORNEYS FOR DEFENDANT SICK, INC.**

#326386.3