STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT

Motion Control Corporation,
Applicant,

# ORDER DENYING APPLICANT'S APPLICATION TO VACATE ARBITRATION AWARD

v.

Court File No. CT 02-010646

SICK, Inc.,
Respondent.

The above-entitled matter came duly on for hearing before Judge Mary Steenson DuFresne on March 11, 2004.

APPEARANCES:

Barry A. O'Neil, Esq., Lommen, Nelson, Cole & Stageberg, P.A., 1800 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, appeared for Motion Control Corporation.

Steven H. Silton, Esq., Mansfield, Tanick & Cohen, P.A., 1700 Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, appeared for SICK, Inc.

Based upon the evidence adduced, the argument of counsel, and all of the files, records, and proceedings herein,

THE COURT FINDS:

1. Applicant brings an application to vacate an arbitration award and asserts several arguments before this court.
2. Applicant brings this application to vacate the arbitration award pursuant to Minnesota Statutes Section 572.19, subd. 1(3), asserting that the arbitrator exceeded the powers granted to him in the 1998 Distributor Agreement by imposing a termination date of March 31, 2004 on the Distributor Agreement. As evidence that the arbitrator exceeded his powers, Applicant alleges that the arbitration award did not draw its essence from the Distributor Agreement and was not responsive to the issues because neither Applicant nor Respondent submitted the question of Distributor Agreement termination to the arbitrator.



EXHIBIT
tabbles
1

3. Respondent opposes Applicant's application to vacate the arbitration award and asserts that judicial appeals of arbitration decisions are subject to a narrow standard of review and Applicant has fallen short of its burden to prove that the arbitrator exceeded his power. Respondent asserts that the arbitration award draws its essence from the Distributor Agreement and that the arbitrator worked well within the confines of his powers when he fashioned the arbitration award pursuant to the American Arbitration Association's Rules.

IT IS ORDERED:

1. Let the attached Memorandum of Law be incorporated by reference herein.
2. Applicant's application to vacate the arbitration award is **DENIED**.
3. The court confirms Arbitrator Richard B. Solum's April 1, 2002 arbitration award.

LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT:

Mary S. DuFresne

Dated: May 6, 2004

Mary Steenson DuFresne
Judge of District Court

MEMORANDUM OF LAW

*Motion Control Corporation v. SICK, Inc.*

Court File Number: CT 02-010646

## I. FACTS

The seeds of the matter before this court, the most recent manifestation of a protracted legal struggle between the parties, were sown when Arbitrator Richard B. Solum (hereinafter "Solum"), a former Hennepin County Judge, issued his April 1, 2002 Memorandum & Decision and Award (hereinafter the "Award") wherein he ruled that a 1998 distributorship agreement between the parties would terminate on March 31, 2004. In an order dated March 16, 2004, this court granted Motion Control Corporation's (hereinafter "MCC") motion to stay the effect of the Award and extended its termination date to May 31, 2004.

SICK, Inc. (hereinafter "SICK"), a Minnesota-based manufacturer of photoelectric sensors used in the automobile industry, and MCC, a Michigan corporation that distributes automobile parts and products, entered into a distributorship agreement (hereinafter the "Agreement") on October 5, 1998 under which MCC would be the exclusive master distributor of SICK products in the state of Michigan. Agreement at § 4. The Agreement was scheduled to last for one year but allowed for automatic one-year extensions unless either party gave ninety-days written notice to terminate; however, SICK could not terminate the Agreement so long as MCC "complied with the terms and conditions of th[e] Agreement." *Id.* at § 13. The terms and conditions of the Agreement obligated MCC to, *inter alia*, "employ at its expense at least 15 people who are trained on the sale of the SICK Products and who will devote their time to the marketing and sale of

SICK Products in the Territory" and "[p]rovide timely and concise follow-up to the Sales Lead Sheets." *Id.* at § 6. SICK was, *inter alia*, obligated to "support and assist [MCC] in sales of SICK Products." *Id.* at § 1. If SICK sought termination of the Agreement based upon MCC's "inadequate performance," MCC could, "as its sole and exclusive remedy . . . immediately submit the issue in question to informal binding arbitration at Minneapolis, Minnesota." *Id.* at § 13. In referencing arbitration, the Agreement stated that "[t]o the extent that the parties cannot agree on the rules governing the informal arbitration, the rules of the American Arbitration Association shall apply." *Id.*

On September 28, 2000, SICK notified MCC that it wished to terminate the Agreement and cited MCC's alleged inadequate performance as grounds for termination. On December 4, 2000 MCC requested arbitration as provided for in the Agreement and the matter was presented to a panel of three arbitrators on July 17, 18, and 23, 2001. The arbitrators' August 3, 2001 decision found that MCC had contravened the Agreement by failing to perform some of its obligations and SICK had failed to give proper notice of termination to MCC by failing to adequately inform MCC of the steps it needed to take to cure the alleged violations. The arbitrators ultimately held that SICK's attempted termination was unjustified and concluded that the Agreement was still in effect. The arbitration award was confirmed by Hennepin County District Court Judge Bruce A. Peterson in an order dated December 13, 2001.

In a letter dated July 2, 2001, SICK gave timely notice to MCC of its intention to terminate, or, in this case, not renew, the Agreement on its annual expiration date of October 5, 2001 and again noted MCC's inadequate performance, specifically citing MCC's alleged "failure to employ at all times at least 15 people trained on the sale of

SICK products and who have devoted their time to marketing and sales of SICK products in the territory . . . ; failure to submit point-of-sales reports as required in the [Agreement]; [and] failure to complete lead follow-up sheets in a concise and timely manner." In a letter dated July 20, 2001, MCC attempted to prove its compliance with the Agreement and requested arbitration; the parties eventually mutually agreed to have Solum serve as arbitrator during the second arbitration.

Prior to arbitrating their dispute before Solum, SICK and MCC each submitted pre-arbitration statements outlining the issues, as they saw them, and their respective arguments. In his October 26, 2001 Decision on Pre-hearing Motions (hereinafter "Solum's October 26 Decision"), an order consented to by both SICK and MCC, Solum observed that the parties had, by force of the Agreement, agreed that the rules of the American Arbitration Association (hereinafter "AAA") should apply; Solum specifically quoted a portion of AAA Rule 43(a) which states in full: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." *See* Solum's October 26 Decision, Page 1. Under the heading "Scope of Arbitration – Paragraph 2 and Paragraph 3 of Section 13 [of the Agreement]," Solum wrote:

> The parties have a dispute concerning whether there is an effective termination of the 1998 Distributor Agreement (hereafter "Agreement") in respect to a letter/notice of SICK to MCC dated July 2nd, 2001, and a letter/notice of SICK to MCC dated August 23, 2001. As such letter(s) or notice(s) implicate termination issues under both the second and third paragraph of section 13 of the Agreement, there could have been a question as to whether the scope of the arbitration here included all such issues. While the arbitrator had concluded that because the dispute under both such paragraphs is in fact a dispute as to the effectiveness of a termination based on allegations of inadequate performance and that therefore the dispute subject to this arbitration includes issues under both paragraphs, this

> question of scope has been resolved by both parties' agreement that the issues under either or both such paragraphs are here submitted for decision.

*Id.* at 3. In his April 1, 2002 Award, Solum specifically quoted the aforementioned paragraph and, prior to again reciting a portion of AAA Rule 43(a), which he labeled "a fundamental governing guidance of this arbitration," referred to the scope of the arbitration:

> The parties contracted for, and thereby chose, arbitration as a way of settling grievances relative to any intention of SICK to terminate the Agreement "based on the allegation of inadequate performance" by the Distributor, and further agreed that they would agree to the rules governing such arbitration and to the extent they did not agree that the rules of the American Arbitration Association would apply. In this regard, both parties agreed, in connection with a pre-hearing issue, that the scope of this arbitration included all matters associated with the termination of the Agreement[.]

Award, Page 2.

In his Award, Solum found that MCC had breached the Agreement by failing to comply with several provisions, including MCC's substantial failure to provide point of sales reports in compliance with the Agreement until sometime in July 2001 and MCC's failure to employ 15 salespeople with training and expertise in the sale of SICK products. Solum also found that SICK substantially breached provisions of the Agreement by its

> (1) continual failure to disclose its early-2000 determination to break the distributorship agreement with SICK rather than attempting in good faith a resolution of the then differing views as to the Michigan distribution . . . and (2) by a pattern of competing through direct sales transactions and undercut pricing in Michigan to the extent such activities hindered MCC's ability to perform and realize on both parties' contractual intentions relative to the Michigan distribution and to realize on a level of sales personnel required under the Agreement.

*Id.* at 11.

Under the heading "Effect of the Parties' Breaches of the Agreement," Solum outlined his reasoning and justification for the Award, reasoning and justification that this court finds significant and quotes at length:

> While MCC has failed to comply with certain provisions of the Agreement, the breaches of the Agreement by SICK directly and adversely hindered and frustrated MCC's ability to reach sales goals. And SICK's sustained claims of MCC's performance failures motivated by the undisclosed determination to terminate the distributorship, as well as its direct selling/pricing activities in Michigan, impaired MCC's ability to honorably offer or maintain employment of the requisite number of salespersons to sell SICK products. Accordingly, in respect to MCC's failures which were both substantial and meaningful, namely any sales staff and performance failures, they were inextricably entangled with related failures by SICK. The degree to which the failures of SICK were the direct cause (substantial factors) in MCC's breaches are difficult to fully assess, and if they were not the direct cause then MCC's breaches may not be excused.
>
> * * *
>
> Of course, a result which simply leaves the parties in the untenable position of being "partners" in a broken marriage in which they do not trust one another and in which they have different objectives, is likely to yield more conflict in respect to the sales channels in Michigan, pricing policy and the like – and certainly will yield continued litigation, further distributorship termination issues, wasted management time, resources and legal expense (which by now must be well into six figures for each side). All of this with no certainty to either side relative to the future and related business planning in respect to MCC's most important line, and in respect to SICK's most important market.
>
> Accordingly, although the evidence and applicable legal principles could support an absolute conclusion that the Agreement was terminated or was not terminated, such a result would be neither just nor equitable given all the facts here. Rather, not terminating the Agreement and assuring MCC additional time to realize on its efforts in the Michigan market, while at the same time assuring SICK that the distributorship will conclude without further litigation at a reasonable time, is just and equitable under all of the circumstances. The additional time should be that time during which SICK hindered or frustrated MCC's expectations as discussed above, during which MCC incurred the related costs without realizing fully a return on those costs, and during which MCC has planted seeds which may likely reach some material fruition in the future – namely two years from March of 2000 [sic].

*Id.* at 11-12. Given the aforementioned reasoning, Solum concluded that the Agreement had not been terminated by SICK and that it would remain in force and effect until March 31, 2004. *Id.* at 13. Solum also held that the terms of the Agreement were still binding on the parties and that SICK could still terminate the Agreement in accordance with the terms of the Agreement prior to March 31, 2004. *Id.*

On April 22, 2002, MCC sought an order from Solum to modify, clarify, or correct the Award; MCC requested, *inter alia*, that Solum delete that portion of the Award establishing the March 31, 2004 termination of the Agreement because it "(a) is not an action authorized by the arbitration clause under which this matter was submitted, (b) is not a potential action that was raised in the arbitration proceeding, [and] (c) is not legally, factually or equitably supported by the record . . ." MCC's April 22 Memorandum In Support of Its Application to Modify, Clarify or Correct the Award, Page 1 (hereinafter "MCC's Application"). In denying MCC's motion, Solum stated that the parties consented to arbitrate pursuant to the AAA rules and thereby agreed that Solum "was to 'grant any remedy or relief that the arbitrator deems just and equitable.'" Solum's May 6, 2002 Ruling on MCC's Application for Modification, Page 2 (hereinafter "Solum's May 6 Ruling") (quoting AAA Rule 43(a)). Solum stated that he

> did what . . . AAA [R]ule [43(a)] envisions and which is oft-times the reason parties choose arbitration to resolve disputes – to do justice where a strict legal decision may be unjust given the surrounding circumstances . . . Importantly, the decision here is an integrated one in which the undersigned sought to do that which was just and equitable. One cannot, of course, pick and choose from any such arbitration award without altering the calculus underpinning the award's justness . . . The Award neither awards SICK for its "misdeeds" (as it did not get the immediate termination it sought), nor does it award MCC for its breaches (as it did not get the determination that the Agreement was not terminated).

Solum's May 6 Ruling at 3.

MCC also alleged in its Application that Solum reformed the Agreement by inserting a March 31, 2004 termination date; MCC asserted that Solum lacked authority to reform the Agreement because the only issue arbitrated between the parties "was whether SICK is entitled to terminate the Agreement because, for reasons not attributable to SICK, MCC's performance under the Agreement was materially 'inadequate.'" MCC's Application at 6. MCC asserted that the Agreement did not have a termination date but

> provided for a continuing relationship with provisions for annual renewal or termination with cause upon certain grounds . . . [but] [b]y including [the March 31, 2004 termination date] in the . . . Award, the Arbitrator went beyond the authority granted by the Agreement or any other agreement by the parties and effectively ordered a reformation of the Agreement by imposing a termination date of March 31, 2004. Because the issue of reformation was not submitted to the Arbitrator and a reformation is ultimately contrary to both law and equity under the circumstances of this case, [the March 31, 2004 termination date] should be deleted from the Award pursuant to [Minnesota's modification of arbitration award statutes].

*Id.* at 6-7. Solum refuted MCC's contention that he reformed the Agreement and stated:

> The doctrine of reformation was not at issue in the . . . Award. Pursuant to the terms of the Agreement, SICK could terminate the distributorship if MCC was in breach of the Agreement. MCC argues that the . . . Award reforms the Agreement to insert a termination date. But given [my] finding that MCC was in breach of the Agreement, it can just as easily be said that the . . . Award simply defers for MCC's benefit what otherwise would have been a termination as of year-end 2001.

Solum's May 6 Ruling at 2.

Failing to obtain its requested relief from Solum, MCC sought modification or vacation of Solum's Award in Hennepin County District Court on June 28, 2002 pursuant to Minnesota's arbitration modification and vacation statutes; on July 2, 2002 SICK timely filed a notice of removal to the United States District Court, District of Minnesota pursuant to federal removal and supplemental jurisdiction statutes and MCC then filed a motion to modify or vacate Solum's Award in federal court that same day. On July 29,

2002, MCC filed a motion in United States District Court to remand the action to Hennepin County District Court. Citing ancillary jurisdiction, the Court found that SICK had properly removed the action to Federal Court. United States District Court's March 31, 2003 Memorandum Opinion and Order, Page 6 (hereinafter "U.S. District Court's Order").

In addressing MCC's argument for modifying Solum's Award, the Court found that Solum did not contravene Minnesota Statutes Section 572.20, subdivision 1(2)[1] by crafting an award "upon a matter not submitted" to him because the arbitration was *not* "confined to the narrow issue" of whether SICK could have terminated the Agreement based upon MCC's "inadequate performance." U.S. District Court's Order at 12. Citing Solum's statement in the Award that "both parties agreed . . . that the scope of this arbitration included all matters associated with the termination of the Agreement," *Id.* at 11, the Court concluded that "[i]t is clear from the record and from the nature of the Agreement that a full range of issues surrounding termination of the Agreement – not just the termination itself – was submitted to Arbitrator Solum thus served as a valid bases for his decision and award." *Id.* at 12. MCC also asserted that the Court could modify the Award because the question of a termination date was not submitted by the parties, *i.e.*, removing the termination date from the Award would not disturb Solum's finding that the

[1] Minnesota Statutes Section 572.20, subdivision 1, states in full: "**Modification or correction of award**
Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:
(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or
(3) The award is imperfect in a matter of form, not affecting the merits of the controversy."

Agreement was never terminated and would, therefore, not "affect[] the merits of" the Award pursuant to Section 572.20, subd. 1(2). The Court rejected MCC's argument because "[Solum] was faced with submission of complex and interrelated issues, and he crafted an award to specifically address those questions. To remove one part of the [A]ward would clearly undermine the effects of the decision upon the issues submitted." *Id.* at 13.

The Court next addressed MCC's claim that Solum exceeded his powers in contravention of Minnesota Statutes Section 572.19, subdivision 1(3)[2] by including a termination date in the Award because the Agreement did not contain a fixed termination date. Citing Minnesota case law requiring courts to assume that an arbitrator did not exceed his powers unless it is clear that the arbitrator "was unfaithful to his obligations," *Id.* at 14, as well as SICK's and MCC's agreement giving Solum the power "to grant any remedy or relief that [he] deems just and equitable," *Id.* at 17, the Court rejected MCC's claim that Solum exceeded his powers and concluded:

> "MCC has not provided any evidence that the arbitrator exceeded his grant of authority from the parties or that the [A]ward is derived from something other

---

[2] Minnesota Statutes Section 572.19, subdivision 1, states in full: "**Vacating an Award**
Upon application of a party, the court shall vacate an award where:
(1) The award was procured by corruption, fraud or other undue means;
(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
(3) The arbitrators exceeded their powers;
(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 572.12, as to prejudice substantially the rights of a party; or
(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 572.09 and the party did not participate in the arbitration hearing without raising the objection;
But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

than the 'essence' of the Agreement. Indeed, the [A]ward seems designed precisely to address the demonstrated ambiguity in the Agreement as to the parties' intentions and availability of termination. MCC's apparent willful blindness to the role its own breaches played in the arbitrator's decision might only be explained by a dissatisfaction with the result. This, however, is not sufficient to vacate an award."

*Id.*

Again failing to obtain relief, MCC appealed to the Eighth Circuit Court of Appeals wherein the Eighth Circuit concluded that the United States District Court did not have jurisdiction to reach the merits of MCC's claim for modification or vacation of Solum's Award. *Motion Control Corp. v. SICK, Inc.*, 354 F.3d 702, 706 (8th Cir. 2003). The Eighth Circuit, therefore, vacated the U.S. District Court's Order and concluded that SICK's removal to federal court was improper because ancillary jurisdiction did "not provide an independent basis for removal or authorize removal under [28 U.S.C.] § 1441, and because the [federal] district court's diversity jurisdiction did not permit removal due to the prohibition of [28 U.S.C.] § 1441(b)."[3] *Id.* On February 4, 2004, the Eighth Circuit denied MCC's January 12, 2004 Petition for Rehearing and for Rehearing En Banc and, on February 23, 2004, the case was remanded back to this court.

---

[3] The Eighth Circuit found that § 1441(b) prohibited removal to the federal district court because both SICK and MCC are citizens of Minnesota. 28 U.S.C. § 1441(b) states, in full: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

## II. Statement of Claims

MCC brings this application to vacate the Award pursuant to Minnesota Statutes Section 572.19, subd. 1(3) asserting that Solum exceeded the powers granted to him by imposing a termination date of March 31, 2004 on the Agreement. As evidence that Solum exceeded his powers, MCC alleges that the Award did not draw its essence from the Agreement and was not responsive to the issues because neither MCC nor SICK submitted the question of Agreement termination to Solum.

SICK opposes MCC's application to vacate the Award and asserts that judicial appeals of arbitration decisions are subject to a narrow standard of review and MCC has fallen short of its burden to prove that Solum exceeded his power. SICK asserts that the Award draws its essence from the Agreement and that Solum worked well within the confines of his powers when he fashioned the Award pursuant to the American Arbitration Association's Rules.

## III. Vacation of Arbitration Award Standard

A judicial appeal from an arbitration decision "is subject to an extremely narrow standard of review." *Hunter, Keith Industries, Inc. v. Piper Capital Mgmt. Inc.*, 575 N.W.2d 850, 854 (Minn. Ct. App. 1998) (citing *State Office of State Auditor v. Minnesota Ass'n of Prof'l Employees*, 504 N.W.2d 751, 754 (Minn. 1993)). Coupled with this narrow standard of review is Minnesota's policy that strongly favors the finality of arbitration awards. *Erickson v. Great Am. Ins. Cos.*, 466 N.W.2d 430, 432 (Minn. Ct. App. 1991). This court must exercise "[e]very reasonable presumption . . . in favor of the finality and validity of the arbitration award." *National Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748, 750 (Minn.1984). Absent an agreement to the contrary, the

arbitrator "is the final judge of both law and fact, including the interpretation of the terms of any contract, [and] his award will not be . . . set aside for mistake of either law or fact in the absence of fraud, mistake in applying his own theory, misconduct, or other disregard of duty." *Cournoyer v. American Television and Radio Co.*, 83 N.W.2d 409, 411 (Minn. 1957).

MCC alleges that Solum exceeded his powers pursuant to Minnesota Statutes Section 572.19 when he crafted the Award. "The burden of establishing the arbitrator exceeded his authority is on the party challenging the arbitrator's award." *County of Hennepin v. Law Enforcement Labor Services, Inc., Local #19*, 527 N.W.2d 821, 824 (Minn. 1995) (citing *Hilltop Constr., Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 239 (Minn. 1982)). An arbitrator's award "will be set aside only when the objecting party establishes that the arbitrator[] ha[s] clearly exceeded the powers granted to [him] in the arbitration agreement[,] [but] [a] court shall not overturn an award merely because it disagrees with the arbitrator's decision on the merits." *County of Hennepin*, 527 N.W.2d at 824 (citing *Ramsey County*, 309 N.W.2d at 789-90). Further, "[a]bsent a clear showing that the arbitrators were unfaithful to their obligations, the courts assume that the arbitrators did not exceed their authority." *Hilltop Constr.*, 324 N.W.2d at 239 (Minn. 1982) (citing *Simpson v. Simpson*, 232 N.W.2d 132, 137 (Neb. 1975)).

## IV. LEGAL ANALYSIS

**SOLUM DID NOT EXCEED HIS POWERS WHEN HE AFFIXED A MARCH 31, 2004 TERMINATION DATE ON THE AGREEMENT BECAUSE THE AWARD WAS WITHIN THE SCOPE OF SOLUM'S POWERS AND DREW ITS ESSENCE FROM THE PARTIES' AGREEMENT.**

This court may only vacate an arbitration award upon proof of one or more of the grounds listed in Minnesota Statutes Section 572.19, *Hunter, Keith*, 575 N.W.2d at 854 (citing *AFSCME Council 96 v. Arrowhead Reg'l Corrections Bd.*, 356 N.W.2d 295, 299-300 (Minn. 1984)), such as when an arbitrator exceeded his powers, as is MCC's contention in this matter. Minn. Stat. § 572.19, subd. 1 (3) (2002). In reviewing Solum's Award, this court "must independently determine the scope of [Solum's] powers under the parties' [A]greement in *de novo* proceedings." *Children's Hospital, Inc. v. Minnesota Nurses Ass'n*, 265 N.W.2d 649, 652 (Minn. 1978). "The scope of [Solum's] powers is a matter of contract to be determined from a reading of the parties' arbitration agreement[.]" *Id.* (citing *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn. 1977)).

The Agreement's arbitration clause states in full:

> In the event SICK intends to terminate the Agreement based on the allegation of inadequate performance by [MCC], [MCC] may, as its sole and exclusive remedy and if acting in good faith, it shall immediately submit the issue in question to informal binding arbitration at Minneapolis, Minnesota. The rules governing the informal arbitration shall be agreed upon by the parties prior to the arbitration. To the extent that the parties cannot agree on the rules governing the informal arbitration, the rules of the [AAA] shall apply. The decision of the arbitration(s) shall be a final and binding solution of the dispute, and such decision may be entered as the judgment by a court of competent jurisdiction.

Agreement at § 13. Considering the Agreement's arbitration clause in conjunction with Solum's October 26 Decision, the court finds that Solum was empowered to determine a whole host of issues, including whether sufficient grounds existed to terminate the

Agreement. The court finds that the Agreement and its arbitration clause must be viewed in light of Solum's October 26 Decision, a document especially instructive because it was approved by both MCC and SICK and serves as the best indication of what the parties intended. Prior to the arbitration, both parties submitted statements to Solum that served to outline the issues to be arbitrated; Solum distilled from these statements an agreement between MCC and SICK to expand the scope of arbitration to include issues in paragraphs 2 and 3 in section 13 of the Agreement, *i.e.*, issues relating to for cause termination and issues of non-renewal for inadequate performance. *See* Solum's October 26 Decision at 3. Further, Solum concluded in his Award that "both parties agreed, in connection with a pre-hearing issue, that the scope of this arbitration included all matters associated with the termination of the Agreement[.]" Award at 2. MCC contends that the sole issue before Solum was whether the Agreement could be terminated due to MCC's alleged inadequate performance; however, based upon the Agreement's arbitration clause and Solum's October 26 Decision, the court concludes that Solum was not constrained to limit his inquiry to whether sufficient grounds existed to terminate the Agreement.

When deciding whether Solum exceeded the scope of his powers, as determined above, this court "must consider[] whether [the] [A]ward draws its essence from the parties' agreement." *Wolfer v. Microboards Mfg., LLC*, 654 N.W.2d 360, 366 (Minn. Ct. App. 2002), *review denied* (Feb 26, 2003) (citing *City of Minneapolis v. Police Officers' Fed'n of Minneapolis*, 566 N.W.2d 83, 87 (Minn. Ct. App. 1997)). "An arbitration award draws its 'essence' from the [Agreement] and will be upheld if it is rationally derived from the [Agreement] viewed in the light of the [Agreement's] language, its context, and

other indicia of the parties' intent, including past practice." *City of Minneapolis*, 566 N.W.2d at 87 (citing *Ramsey County v. AFSCME, Local 8*, 309 N.W.2d 785, 790 (Minn. 1981)). Generally, "an arbitration award must be enforced . . . as long as the award 'draws its essence' from the [parties'] [A]greement." *State Office of State Auditor*, 504 N.W.2d at 756 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983)).

Prior to the arbitration with Solum, the parties agreed, as evidenced in Solum's October 26 Decision, to apply the rules of the AAA. Specifically, the parties agreed that Solum should apply AAA Rule 43(a) which states, in relevant part: "The arbitrator may grant *any remedy or relief that the arbitrator deems just and equitable* and within the scope of the agreement of the parties[.]" *See* Solum's October 26 Decision at 1 (emphasis added). Solum also stated that he "would do everything possible to hear the evidence, make sure the parties have adequate time and opportunity to present their cases, *and provide a result which will hopefully be both just and equitable, and guided by rules of law*." *Id.* (emphasis added). Lastly, Solum again laid down the scope of his power in his May 6 Ruling, stating:

> The parties agreed to arbitrate this dispute pursuant to the rules of the [AAA] and renewed their agreement in respect to pre-hearing motions, all as set out in the [October 26 Decision]. Accordingly, the parties agreed that the arbitrator was to 'grant any remedy or relief that the arbitrator deems just and equitable.' For reasons set out in the [Award], the undersigned did so here, while being guided by legal principles as well.

Solum's May 6 Ruling at 2.

MCC asserts that the Agreement provided for a continuing relationship between MCC and SICK with provisions for annual renewal or termination with cause upon certain grounds; MCC finds the March 31, 2004 termination date inconsistent with the

Agreement, as well as the original intent of MCC and SICK, and contends that Solum exceeded his powers by imposing an arbitrary termination date on the Agreement. MCC alleges further that the termination date was not contemplated by the parties because the Agreement did not contain a termination date and did not permit Solum to end the relationship between MCC and SICK. Lastly, MCC claims that the Award was not responsive to the issues submitted to Solum for arbitration because the March 31, 2004 termination date was anticipated by neither MCC nor SICK when they entered arbitration. The court finds MCC's arguments here disingenuous because they expressly agreed to be bound by the AAA Rules and agreed that Solum could "grant any remedy or relief that the arbitrator deems just and equitable." MCC received exactly what it bargained for, whether it anticipated a termination date or not. Solum crafted a March 31, 2004 termination date because he believed it to be the most equitable remedy and stated "[t]he Award neither awards SICK for its 'misdeeds' (as it did not get the immediate termination it sought), nor does it award MCC for its breaches (as it did not get the determination that the Agreement was not terminated)." Solum's May 6 Ruling at 3.

The court finds the following language especially apt in this case:

> [T]he power to fashion a remedy is a necessary part of the arbitrator's jurisdiction unless withdrawn from him by specific contractual language between the parties or by a written submission of issues which precludes the fashioning of a remedy. This holding ensures that the arbitration process will function smoothly, efficiently, and without absurd results.

*City of Bloomington v. Local 2828 of Am. Federation of State, County* and *Municipal Employees*, 290 N.W.2d 598, 603 (Minn. 1980). The court finds nothing in the Agreement or Solum's October 26 Decision stating Solum was precluded by either MCC

or SICK from fashioning a remedy. Further, the remedy fashioned by Solum avoided the absurd result of MCC and SICK remaining "'partners' in a broken marriage in which they do not trust one another and in which they have different objectives." Award at 12.

Given the Agreement, Solum's October 26 Decision, and references to the October 26 Decision in his Award and May 6 Ruling, the court finds that MCC and SICK agreed to be bound by the AAA Rules, specifically Rule 43(a); in so doing, both parties knew or should have known that an equitable remedy, including termination of the Agreement, could be instrumental in Solum's eventual Award. The court holds that MCC has failed to carry its burden that Solum clearly exceeded his powers and concludes that the Award does indeed draw its essence from the Agreement because, when viewed in light of the Agreement and Solum's October 26 Decision (an indication of MCC's and SICK's intent), the Award is rationally derived from the Agreement. Because the Award draws its essence from the Agreement Solum did not exceed his powers in contravention of Minnesota Statutes Section 572.19, subdivision 1(3).

## V. Conclusion

The court believes that MCC and SICK entered into the Agreement with the best of intentions and the hope of a mutually profitable business relationship; unfortunately, due to several factors, the relationship soured. The court is cognizant of the fact that a tremendous amount of ink has been spilled and money spent on attorney fees for this protracted, and seemingly never ending, litigation. With this decision, it is the court's expectation that the parties can put the litigation aside and move forward with their respective businesses.

**M.S.D.**