**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Court File No. 01-CV-1496 JRT/FLN

SICK, Inc.,
a Minnesota corporation,

Plaintiff,

v.

**AFFIDAVIT OF PAUL B. KARTY**

Motion Control Corporation and
Commerce Industrial Controls, Inc.,

Defendants.

---

**PAUL B. KARTY**, being duly sworn upon oath, deposes and states as follows:

1. I am the Account Manager of Motion Control Corporation, Inc. ("MCC"). If called as a witness, I can competently testify to the facts contained in this Affidavit.

2. When MCC entered into the 1998 Distributor Agreement with SICK, I did not intend to enter into a contract that would prevent MCC from having a legal remedy to recover the value of the contract if SICK failed to perform its contractual obligations. I understood that the indemnification provision of the Agreement was for the sole purpose of preventing MCC form recovering consequential damages including lost profits, when a third party brought suit against SICK for a product liability claim. My understanding and expectation when MCC entered into the Agreement was that MCC would not be limited in recovering damages, including the lost profits on sales, if SICK breached the Agreement by directly or indirectly selling to customers in Michigan and engaged in price setting and competition with MCC. My understanding of the meaning of the consequential damage limitation in the indemnification provision of the Agreement arises from my 20 years experience in negotiating and entering into agreements, including other distributor agreements. This provision was modeled after the Dolan Jenner contract which MCC gave up to enter into an agreement with SICK, Inc. MCC would not

have entered into an agreement that included a provision that was intended to prevent MCC from being made whole if SICK breached the Agreement. There were never any discussions with SICK when we negotiated the Agreement about limiting consequential or lost profit damages that could be recovered from one another.

3. In my experience, the main purpose for the relationship between a manufacturer and a distributor is implementing and maintaining a sales and marketing channel for the manufacturer's goods to a particular market. A distributor's primary interest in the relationship is not just to purchase the goods from the manufacturer. Ultimately, the distributor's purchase of the goods is only a small part of the relationship. The distributor only takes title to the goods for the purpose of reselling them to the customer. A distributor is hired for its customer relationships, its technical expertise in identifying applications for the manufacturer's products, knowledge of a particular market, its ability to promptly deliver the product to the customer, and its availability to provide service to the customer both before and after a sale. A distributor is not the end-user of a manufacturer's products, and the relationship between a distributor and a manufacturer, such as MCC and SICK, involves much more than a sale of goods.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

s/ Paul B. Karty
**PAUL B. KARTY**

Subscribed and sworn to before me
this 28th day of July, 2004

s/ Notary Public
Notary Public